ATTORNEY DISCIPLINARY PROCEEDINGS
LPER CURIAM.
This attorney disciplinary proceeding arises from nine counts of formal charges[1] filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Blair David Condolí, an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS

Gray Matter

In November 1998, Joan Gray (as guardian of and on behalf of her two minor grandchildren) and Veronica Tillman retained respondent to represent them in a personal injury matter against Ms. Gray’s *503 insurance carrier. After being retained, respondent failed to answer his clients’ requests for information. Without notice to his clients, respondent settled the personal injury claims of the minor children and Ms. Tillman for $7,000. Upon receiving the settlement checks, he endorsed his clients’ names without the proper consent and authority and deposited them into his office account. Respondent failed to disburse any funds to his clients or their medical provider, despite having guaranteed payment for $2,815 in medical services rendered to his clients.
| ¡¡.Upon learning of the settlement from her insurance carrier, Ms. Gray filed a complaint with the ODC. In the course of the investigation, respondent gave a sworn statement conceding he failed to communicate with his clients. He maintained no funds were due his clients after deduction of his legal fee[2] and the medical expenses; however, he admitted that he did not keep financial records at the time and was unable to locate his client file regarding the settlement.

Wilson Matter

In 1996, Saleem Wilson retained respondent to represent him in a property damage matter against his insurance carrier. Without Mr. Wilson’s knowledge or consent, respondent settled the property damage claim for $15,879.44. Respondent forged his client’s name on the settlement draft and converted the funds.
When respondent refused to respond to his client’s requests for information regarding the status of his claim, Mr. Wilson retained counsel, Wayne James, who had employed respondent as a law clerk prior to respondent’s bar admission, to seek recovery of the settlement proceeds. Respondent failed to honor the formal demands for payment. Therefore, Mr. Wilson and Mr. James filed a report with the New Orleans Police Department, which resulted in respondent’s arrest. Following respondent’s criminal conviction stemming from the theft of funds, respondent provided $15,000 in restitution to Mr. Wilson.
Mr. Wilson filed a complaint and supporting documentation with the ODC. In the course of the ODC’s investigation, respondent gave a sworn statement in which | she indicated that he failed to disburse the funds to Mr. Wilson because there was a dispute concerning the amount of the legal fees. Respondent maintained he did not know how to place the disputed funds in the registry of the court. He further testified that following his arrest, he closed all of his bank accounts and placed the funds in a safe in his home. He admitted he borrowed against the funds for personal and office expenditures.

Wright Matter

On October 7, 1998, Louis C. Wright paid respondent an initial retainer fee of $350 to institute bankruptcy proceedings on his behalf. Over the course of the next six months, respondent failed to file the appropriate schedules, resulting in the dismissal of the bankruptcy case. On April 14, 1999, Mr. Wright sent correspondence to respondent, advising that respondent’s mishandling and neglect of the legal matter delayed his attempts to correct his *504 credit problems and also hampered efforts to amicably resolve the matter with his mortgage company, likely resulting in the loss of his home. Respondent failed to respond to his client’s request for the refund of the fee.
Mr. Wright filed a complaint and supporting documentation with the ODC. During the ODC’s investigation of the complaint, respondent gave a sworn statement alleging his delay in filing the appropriate schedules stemmed from his client’s failure to give him the necessary information.

Lavelis Fountain Matter

On November 17,1998, Lavelis Fountain retained respondent to represent him in a personal injury matter on a contingency fee basis. Respondent failed to take any Paction in the matter on behalf of his client. Moreover, he neglected to communicate with Mr. Fountain after January 1999.
Mr. Fountain filed a complaint and supporting documentation with the ODC. Respondent failed to respond to the ODC’s requests for information.

Williams Matter

In 1998, Rodney Williams retained respondent to represent him in a personal injury matter and a discrimination matter. Without the knowledge or consent of Mr. Williams, respondent settled the personal injury matter for $3,660. Respondent forged Mr. Williams’ signature on the settlement draft and converted the funds. In subsequent conversations with his client, respondent neglected to advise he had settled the case and received the funds. As to the discrimination proceeding, respondent failed to diligently pursue the case on behalf of Mr. Williams, and refused to respond to his client’s requests for information.
Mr. Williams filed a complaint and supporting documentation with the ODC advising of respondent’s misconduct. In a sworn statement, respondent claimed that according to the employment contract, he did not need his client’s permission to settle the personal injury case and cash the settlement draft. Contrary to Mr. Williams’ testimony at the formal hearing, respondent also testified his client was not entitled to any funds from the personal injury case since the employment contract specified the settlement funds would go toward his expenses in the discrimination suit. The ODC requested that respondent provide a copy of the employment contract, as well as an accounting; however, respondent failed to comply with the request.
| zRuth, Fountain Matter
In 1998, Ruth Fountain retained respondent to institute suit against an automobile dealer stemming from her purchase of an allegedly defective vehicle. While respondent filed suit on behalf of his client, he faked to take any further action in the matter. Ms. Fountain made numerous efforts to contact respondent regarding the status of her case,- but was unable to contact him.
On June 25, 1999, Ms. Fountain filed a complaint with the ODC. In a deposition taken during the ODC’s investigation, respondent admitted Ms. Fountain’s case had “slipped through the cracks,” and that he failed to advise his client he had taken no action in the matter. Respondent contended that he was unable to produce her file because he had misplaced it during one of his office relocations.

Landry Matter

In 1997, Rosalind Christina Landry retained respondent to represent her in a medical malpractice suit. After instituting suit, respondent neglected to reply to discovery requests, resulting in the dismissal of one of the defendants.
*505 On July 6, 1999, Ms. Landry filed a complaint with the ODC. Respondent provided an initial sworn statement in the matter, but provided no further information.

Vance Matter

In September 1997, Alice Gail McBride Vance retained respondent to represent her in a personal injury matter. Although respondent took some initial action, he later abandoned Ms. Vance’s case and failed to respond to her requests for information regarding the legal matter and her files in his possession.
On July 12, 1999, Ms. Vance filed a complaint and supporting documentation with the ODC. In a sworn statement, respondent denied that he neglected his client’s | fimatter and failed to communicate with her. Contrary to Ms. Vance’s testimony at the formal hearing, respondent contended his employment was terminated by Ms. Vance prior to completion of her case. However, he conceded he never received anything in writing from her advising of such and that he never formally withdrew from her case. He maintained the delay in resolving her case stemmed from a court clerical error in obtaining a default judgment in his client’s favor. Moreover, respondent stated that he advised Ms. Vance she could pick up her file at any time after she terminated his services.

Lancelin Matter

In May 1998, Trent M. Lancelin retained respondent to represent him in property damage and personal injury matters stemming from a vehicular accident. Over the course of the next year, Mr. Lancelin spoke to respondent on three occasions, and was led to believe respondent was pursuing the case. However, without Mr. Lancelin’s knowledge or consent, respondent had settled the property damage and personal injury claims for $665 and $7,800, respectively, shortly after he was retained. Respondent had endorsed his client’s signature on the settlement drafts and converted the funds to his own use.
On September 15, 1999, Mr. Lancelin filed a complaint with the ODC advising respondent would not respond to his requests for information regarding the status of his case. At the time, Mr. Lancelin was still unaware respondent had settled his case.
DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed formal charges alleging respondent’s actions violated the following provisions of the Rules of Professional Conduct: Rules 1.1 | ./neglect of a legal matter), 1.2 (failure to abide by scope of representation), 1.3 (incompetence), 1.4 (failure to communicate), 1.5 (failure to execute written contingency contract, failure to refund unearned fees, failure to place disputed fees in trust and failure to maintain client trust account), 1.15 (commingling and conversion of client funds), 1.16 (failure to protect client interests upon termination of representation), 8.1 (knowingly making a false statement of material fact, failure to respond to lawful demand for information from disciplinary authorities and failure to cooperate in disciplinary investigation), 8.4 (violating or attempting to violate the professional rules, commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer and engaging in conduct involving dishonesty, deceit, fraud, or misrepresentation).
Respondent filed an answer to the formal charges. In his answer, he denied any misconduct.

Recommendation of the Hearing Committee

Respondent failed to appear at the formal hearing. The ODC presented the tes *506 timony of seventeen witnesses in support of its case.
At the conclusion of the hearing, the hearing committee determined the ODC proved the allegations of professional misconduct by clear and convincing evidence. The hearing committee found respondent knowingly and willfully violated duties to his clients, the judicial system and the profession, resulting in serious actual harm. It determined his clients’ legal matters were delayed, and in some instances dismissed, because of his failure to act. Moreover, the committee pointed out his clients were denied their funds.
Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the committee concluded the baseline sanction for respondent’s misconduct is disbarment. |sAs aggravating factors, the committee recognized dishonest or selfish motive, pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the misconduct, and failure to cooperate and obstruction of the disciplinary process. The committee did not cite any mitigating factors. Accordingly, the committee recommended respondent be disbarred.

Recommendation of the Disciplinary Board

The disciplinary board adopted the factual findings of the hearing committee. The board found respondent knowingly, if not intentionally, violated duties owed to his client, the public and the profession. It noted there was actual injury to respondent’s clients because he deprived them of their settlement funds, failed to refund unearned fees, failed to pay third parties and delayed the administration of his clients’ cases. Additionally, many clients had to engage new counsel at additional expense to have their legal problems resolved. The board found such conduct damages the public’s view of the reputation and integrity of the legal profession.
In addition to the aggravating factors cited by the committee, the board recognized the vulnerability of respondent’s victims as an aggravating factor since most of the clients appeared to be legally unsophisticated and have meager resources. Further, although the board recognized respondent’s inexperience in the practice of law as a mitigating factor,[3] it concluded his knowing and/or intentional actions, the pattern of misconduct and the numerous offenses suggest his inexperience in the practice of law had little or nothing to do with his misconduct. The board recommended respondent be disbarred from the practice of law and ordered to pay full restitution to his victims.
IflAlthough neither respondent nor the ODC objected to the disciplinary board’s recommendation, this court, on its own motion, ordered briefing pursuant to Supreme Court Rule XIX, § 11(G)(1)(a). The court’s September 18, 2002 order directed the parties “to address whether the sanction of permanent disbarment pursuant to Supreme Court Rule XIX, Sections 10(a) and 24, as amended August 1, 2001, is appropriate under the facts of this case.”
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisi *507 ana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports a finding of serious professional misconduct. Respondent’s repeated practice of settling client matters on his own volition, forging settlement checks and converting the resulting funds for his own use displays a shocking disregard for his professional obligations. There are no mitigating factors present;[4] however, numerous aggravating factors exist. Under these circumstances, we conclude the baseline sanction is disbarment. However, given the egregiousness |inof respondent’s misconduct, we will further consider whether permanent disbarment is warranted.
On August 1, 2001, after a lengthy period of study and public comment, this court adopted amendments to Supreme Court Rule XIX, § 10[5] and § 24[6] to provide for the sanction of permanent disbarment. In re: Gros, 98-0772 (La.3/15/02), 815 So.2d 799; In re: Parker, 00-3532 (La.3/15/02), 815 So.2d 794; In re: Patrick, 01-1419 (La.3/15/02), 815 So.2d 804. In our commentary accompanying the amendment, we stated, in pertinent part:
In the public interest, the Court has amended Louisiana Supreme Court Rule XIX to codify Permanent Disbarment as an available sanction for attorney misconduct. While the Court has always had the discretion to deny an application for readmission after the requisite five (5)-year waiting period after disbarment, an attorney who is permanently disbarred under these circumstances will be prohibited from applying for readmission to the bar. These amendments reflect the judgment of the Court that in some instances lawyer misconduct may be so egregious as to warrant a sanction of permanent disbarment based on the facts of an individual case and in consideration of the guidelines in Appendix E to the Rules of Lawyer Disciplinary Enforcement.
Inin Appendix E, we set forth several guidelines illustrating the type of cases which might warrant permanent disbarment. We explained that these guidelines *508 were not intended to bind this court in its decisionmaking, but to provide “useful information to the public and to lawyers concerning the types of conduct the Court might consider to be worthy of permanent disbarment.” Under Guideline 1, “repeated or multiple instances of intentional conversion of client funds with substantial harm” are a ground for permanent disbarment. Clearly, respondent’s conduct in the matters at issue falls squarely within this guideline.
As recently noted in In re: Morphis, 01-2803 (La.12/4/02), 831 So.2d 934, we do not lightly impose the sanction of permanent disbarment. Nonetheless, we are firmly convinced that we would be remiss in our constitutional duty to regulate the practice of law if we did not impose that sanction here. Respondent has utterly failed in his ethical obligation to preserve and maintain his client’s funds. As did the respondent in Morphis, respondent has used his law license not to foster the high standards of the profession, but as a license to steal from the citizens of Louisiana. This court cannot and will not tolerate such conduct by an attorney, upon whom high standards of honesty and righteousness are erected. See Louisiana State Bar Ass’n v. Haylon, 250 La. 651, 198 So.2d 391, 392 (1967). Because respondent does not possess the requisite moral fitness to practice law in this state, he must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Blair David Condolí be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § | ia24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this'state. Respondent is ordered to make full restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent was originally charged with a total of fourteen counts of misconduct. The disciplinary board dismissed five counts of the formal charges (counts IX, X, XI, XIII and XIV) based on a finding respondent was not properly served. The ODC did not file an objection in this court to the board’s dismissal of these counts. Accordingly, we will not discuss them further.

. Respondent provided an accounting alleging he expended 27 hours on behalf of his clients at $150 per hour, totaling $4,050. However, the allocation of time appears to be suspect. For example, respondent billed his clients three hours to request a police report and draft a one-page letter of representation. He billed two hours for reviewing a two-page police report and making a phone call to Ms. Gray. He billed five hours for preparing a letter of representation and arranging for his clients to receive treatment with one medical clinic.

. Respondent was admitted to the practice of law in 1997. Each of the numerous complaints and the formal charges were filed within approximately two years of respondent's bar admission.

. The board identified respondent's lack of experience as a mitigating factor, but recognized that his misconduct resulted from intentional misconduct, not inexperience. Like the board, we give little, if any, weight to respondent’s inexperience.

. Supreme Court Rule XIX, § 10(A) was amended to add the highlighted language:
(1) Disbarment by the court. In any order or judgment of the court in which a lawyer is disbarred, the court retains the discretion to permanently disbar the lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.

. Supreme Court Rule XIX, § 24(A) was amended to add the highlighted language:
A disbarred lawyer or a suspended lawyer who has served a suspension period of more than one year, exclusive of any waivers or periods of deferral, shall be reinstated or readmitted only upon order of the court.... No lawyer may petition for readmission until five years after the effective date of disbarment. A lawyer who has been placed on interim suspension and is then disbarred for the same misconduct that was the ground for the interim suspension may petition for readmission at the expiration of five years from the time of the effective date of the interim suspension. The court retains the discretion, in accordance with Section 10A of this rule, to permanently disbar a lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.