917 So.2d 1068 (2005)
In re Philip M. BRADLEY.
No. 2005-B-1188.
Supreme Court of Louisiana.
November 29, 2005.
*1069 PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Philip M. Bradley, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.[1]

FORMAL CHARGES

Count I
Respondent represented Kevin Hopper in a personal injury matter stemming from injuries that left Mr. Hopper a paraplegic. Suit was filed in March 1987. Judgment awarding Mr. Hopper $4,282,808.25 was rendered in June 1993 and, following appeals, became final in March 1995. Subsequently, respondent advised Mr. Hopper on investing his judgment proceeds.
In April 1997, respondent approached Mr. Hopper for assistance in providing collateral for respondent's $57,000 business loan for his seafood business. At this time, based on the prior personal injury representation and respondent's subsequent investment advice, Mr. Hopper believed he had an on-going attorney-client relationship with respondent. Mr. Hopper agreed to pledge as collateral 1,600 shares of stock he owned valued at approximately $60,000. In exchange for this pledge, respondent assigned collateral to Mr. Hopper in the form of real estate holdings, promissory notes payable to respondent, future legal fees from respondent's other cases, and 4% ownership in respondent's seafood business.
In April 1998, respondent gave Mr. Hopper further investment advice, advising him to invest a portion of his judgment proceeds with Frankwell Investment Services in Houston, Texas. This investment subsequently resulted in litigation in which respondent participated as a witness on Mr. Hopper's behalf.
In August 1998, after respondent defaulted on the business loan for which Mr. Hopper had provided collateral, the bank sold Mr. Hopper's stock to satisfy the loan. Thereafter, respondent failed to honor his assignment of collateral to Mr. Hopper, who retained other counsel and filed suit *1070 against respondent.[2] In April 1999, respondent made a $10,000 payment to Mr. Hopper as partial restitution, but no further payments have been made.
The ODC alleges respondent's conduct in this matter violated Rule 1.8 (conflict of interest) of the Rules of Professional Conduct.

Count II(A-H)
Respondent represented multiple clients who received medical treatment at Baton Rouge Physical Medicine & Rehabilitation ("provider"). Respondent settled seven cases and withheld funds from these settlements to pay the provider. The funds due the provider totaled $14,649. However, respondent failed to remit the payments to the provider and instead converted the funds to his own use.
On November 5, 2000, respondent agreed to pay the provider the balances owed on all of his clients' accounts, including those cases that were still pending, as well as the seven that had settled. The total amount owed at that time was $20,819. Respondent agreed to make thirteen monthly payments of $1,500 each, plus a final payment of $1,319, which was due in December 2001. By the end of December 2001, respondent had made only sporadic payments totaling $9,800 and still owed the provider $11,019.
On December 28, 2001, the provider filed a disciplinary complaint against respondent. Subsequently, respondent made additional payments to the provider. However, as of May 9, 2002, he still owed the provider $9,969.
Furthermore, in making payments, respondent failed to direct the provider to apply them to specific client accounts. As such, the provider applied them to the oldest accounts first. Therefore, of the $14,649 respondent owed on the settled cases, he still owed $4,819 as of May 9, 2002.
The ODC alleges respondent's conduct in these matters violated Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

Count II(I)
In connection with the investigation of the provider's complaint, respondent gave a sworn statement to the ODC on April 26, 2002, during which he agreed to produce complete records of his client trust account within thirty days. After being granted an additional thirty-day extension, respondent failed to produce the records.
Thereafter, in attempting to issue a bank subpoena for the records, the ODC discovered that respondent had left Louisiana without providing a forwarding address or updating his Louisiana State Bar Association registration information. The ODC eventually located respondent in Virginia and required the assistance of Virginia law enforcement to personally serve respondent with the notice of the bank subpoena.
The ODC alleges respondent's conduct in this matter violated Rule 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.

Count III
Terri Lynn Cobbs hired respondent to represent her minor son in a civil lawsuit against a pharmacy that allegedly improperly filled her son's prescription. On July 8, 1999, respondent fax-filed the suit. On July 20, 1999, he filed the original suit. *1071 However, respondent did not request that service be made on the defendants until October 20, 1999.
In February 2000, the defendants filed a declinatory exception of insufficiency of service of process and a peremptory exception of prescription. In May 2000, the trial court granted the declinatory exception of insufficiency of service of process and dismissed the suit.
Respondent filed for a devolutive appeal, which was granted. However, respondent was required to pay $377.40 in costs associated with the appeal, which he failed to do. Meanwhile, in September 2000, defense counsel tendered a $2,500 settlement offer to respondent. Respondent relayed the offer to Ms. Cobbs, who accepted the offer. However, respondent discontinued all communications with defense counsel, despite their numerous requests for information, and failed to finalize the settlement.
Thereafter, the defendants filed a motion to dismiss the suit. The appeal was dismissed in November 2000 for failure to pay costs. In April 2001, defense counsel wrote to respondent withdrawing all settlement offers.
In January 2002, Ms. Cobbs filed a disciplinary complaint against respondent. In an April 2002 sworn statement, respondent falsely informed the ODC that he did not follow through with the appeal because settlement negotiations were ongoing. Furthermore, he falsely stated that the settlement was not finalized because defense counsel withdrew the offer.[3] Respondent also stated in his sworn statement that he would file suit to enforce the settlement at his own expense, which he failed to do.
Finally, respondent relocated to Virginia without informing Ms. Cobbs or withdrawing from her case.
The ODC alleges respondent's conduct in this matter violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.16(d) (obligations upon termination of the representation), 8.4(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.

Count IV
In April 2002, the ODC received a complaint from Gloria Morris against respondent. Notices of the complaint were sent to respondent's primary and secondary bar registration addresses. The United States Postal Service forwarded both notices to other addresses, one of which was in Virginia.
On January 27, 2003, respondent sent a letter to the ODC suggesting that all files related to the Morris complaint were submitted to the ODC by another attorney as a part of a companion complaint. Respondent also indicated "there is nothing more that I could add that is not contained in the files."
On April 8, 2003, the ODC wrote to respondent reminding him of his obligation to provide a comprehensive written response and requesting answers to additional questions. This letter was sent via certified mail to five different known addresses for respondent. Respondent signed personally for one that was addressed to his secondary bar registration address but forwarded to a post office box in Virginia. However, he failed to claim the letter mailed directly to the same Virginia post office box.
*1072 Despite these efforts by the ODC, respondent failed to respond to the complaint and failed to cooperate with the ODC in its investigation.
The ODC alleges respondent's conduct in this matter violated Rule 8.4(g) of the Rules of Professional Conduct.

Count V
In April 1999, Danna Gauthier hired respondent to file a lawsuit against a sorority at Southern University. Ms. Gauthier was unable to communicate with respondent, despite repeated attempts. Respondent also failed to file suit on Ms. Gauthier's behalf, apparently because Ms. Gauthier's mother instructed him not to do so. Thereafter, respondent relocated to Virginia without informing Ms. Gauthier or withdrawing from her case.
The ODC alleges respondent's conduct in this matter violated Rules 1.3, 1.4 (failure to communicate with a client), and 1.16(d) of the Rules of Professional Conduct.

Count VI
Respondent was admitted pro hac vice to represent plaintiff Rick Noel in a case in the United States District Court for the Eastern District of Virginia. On July 25, 2000, Mr. Noel's case was dismissed on the defendants' motion for summary judgment.
Respondent's neglect in properly handling the notice of appeal of the dismissal resulted in substantial legal expenses for the defendants.[4] As such, on January 30, 2001, respondent was ordered to pay defense counsel $4,997.80 by February 26, 2001. However, he failed to do so and also failed to respond to defense counsel's motion to enforce the court order. An order to show cause was entered, but several days before the show cause hearing, respondent agreed to satisfy the January 30, 2001 order in five monthly payments.
Respondent only made the first two payments and thereafter failed to respond to defense counsel's telephone messages. Consequently, on February 12, 2002, the court ordered that a show cause hearing be held on March 28, 2002 and ordered the United States Attorney to prosecute contempt proceedings. Respondent failed to respond to the court's order to respond in writing by February 25, 2002 and failed to appear for the March 28, 2002 hearing.
Thereafter, the court found respondent in civil contempt of court and ordered him to pay defense counsel $4,075.31 plus interest. The court also revoked respondent's pro hac vice privilege pending payment of the above amount. Despite these orders, respondent has failed to pay defense counsel.
The ODC alleges respondent's conduct in this matter violated Rules 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal) and 8.4(d) of the Rules of Professional Conduct.

Count VII
In April 2001, Charlotte Holland hired respondent to represent her in a personal *1073 injury matter. Subsequently, respondent received a $19,000 settlement offer from the tortfeasor's insurer, which Ms. Holland rejected as inadequate. Thereafter, respondent settled the matter for $21,500 without Ms. Holland's knowledge or consent, only informing her after the fact.
During its investigation of Ms. Holland's disciplinary complaint filed against respondent in August 2002, the ODC sent requests for supplemental information to respondent at numerous addresses, including three in Virginia. Despite receiving the requests and despite being granted extensions of time in which to answer, respondent failed to provide the supplemental information.
The ODC alleges respondent's conduct in this matter violated Rules 1.2 (scope of the representation), 1.4, and 8.4(g) of the Rules of Professional Conduct.

Count VIII
In April 2001, Michelle Malbrough hired respondent to represent her in a personal injury matter. In August 2002, Ms. Malbrough checked court records and learned no lawsuit had been filed on her behalf. Respondent failed to inform her that her claim had prescribed or that she had a possible legal malpractice claim against him for his failure to timely file suit.
In response to Ms. Malbrough's disciplinary complaint filed against him in August 2002, respondent falsely stated to the ODC that suit had been filed on her behalf. Subsequently, respondent falsely informed Ms. Malbrough that he had filed suit on her behalf.
Furthermore, respondent relocated to Virginia without informing his client and failed to withdraw from her case.
The ODC alleges respondent's conduct in this matter violated Rules 1.3, 1.4, 1.16(d), and 8.4(c) of the Rules of Professional Conduct.

Count IX
Kelvin Wells hired respondent to represent him in litigation pertaining to the alleged wrongful death of his father. Mr. Wells provided file documents to respondent, who thereafter failed to communicate with him. Respondent also relocated to Virginia without advising Mr. Wells and failed to withdraw from his case or return his file.
In February 2002, Mr. Wells filed a disciplinary complaint against respondent, asserting that he had not heard from respondent in several months. The complaint was referred to the Louisiana State Bar Association's Practice Assistance Counsel, which closed its file in April 2002 after respondent and Mr. Wells made contact with each other. In January 2003, Mr. Wells filed a second complaint against respondent, asserting that he could not locate respondent. The ODC mailed notices of Mr. Wells' complaint to respondent at his primary and secondary bar registration addresses. Respondent failed to respond to these notices because apparently he was no longer at either address. In April 2003, the ODC forwarded a follow-up notice to an address in Virginia. Despite personally signing for the notice, respondent failed to respond to the complaint.
The ODC alleges respondent's conduct in this matter violated Rules 1.3, 1.4, 1.16(d), and 8.4(g) of the Rules of Professional Conduct.

Count X
Sharron Coats hired respondent to represent her in a wrongful termination matter. In January 2001, respondent advised Ms. Coats' former employer of his representation. Thereafter, respondent failed to communicate with Ms. Coats. Respondent also relocated to Virginia without advising Ms. Coats and failed to withdraw from her case or return her file.
*1074 In February 2003, Ms. Coats filed a disciplinary complaint against respondent. The ODC mailed notices of Ms. Coats' complaint to respondent at his primary and secondary bar registration addresses. Respondent failed to respond to these notices because apparently he was no longer at either address. In April 2003, the ODC forwarded a follow-up notice to an address in Virginia. Despite personally signing for the notice, respondent failed to respond to the complaint.
The ODC alleges respondent's conduct in this matter violated Rules 1.3, 1.4, 1.16(d), and 8.4(g) of the Rules of Professional Conduct.

Count XI
Shawanday Washington hired respondent to represent her in a personal injury matter. Respondent filed suit on behalf of Ms. Washington and her minor child in May 2002. The last pleading filed in the record of the suit was respondent's August 2002 request that the defendant be served. Respondent failed to communicate with Ms. Washington regarding her case. He also relocated to Virginia without informing Ms. Washington and failed to withdraw from her case or return her file.
Ms. Washington filed a disciplinary complaint against respondent. The ODC mailed notices of Ms. Washington's complaint to respondent at his primary and secondary bar registration addresses. Respondent failed to respond to these notices because apparently he was no longer at either address. In September 2003, the ODC forwarded a follow-up notice to an address in Virginia. Despite personally signing for the notice, respondent failed to respond to the complaint.
The ODC alleges respondent's conduct in this matter violated Rules 1.3, 1.4, 1.16(d), and 8.4(g) of the Rules of Professional Conduct.

Count XII
During the investigation of Count II, the ODC subpoenaed and reviewed respondent's client trust account records for the time period between April 30, 1997 and November 30, 2000. The review revealed that the account was overdrawn on numerous occasions, including an overdraft of $8,918.03 on May 26, 1999. There were also various instances of obvious commingling of personal and client funds in the account.[5] The records also strongly suggest that respondent converted client and/or third-party funds to his own use.[6] *1075 Finally, further review of the records revealed the absence of any evidence that respondent utilized his trust account when depositing and/or disbursing funds belonging to the clients referenced in Count II.[7]
With the help of Virginia law enforcement, on October 21, 2003, the ODC served respondent personally with a copy of his bank records along with a request for an explanation of the above findings. On November 4, 2003, respondent faxed an acknowledgment of receipt of the request but also requested an extension of time in which to answer. Thereafter, respondent failed to respond to the ODC's request for information. A prima facie case of conversion of unknown amounts of client and/or third-party funds is present on the face of the trust account records, and by failing to respond, respondent has failed to rebut this allegation.
The ODC alleges respondent's conduct in this matter violated Rules 1.15(a) (safekeeping property of clients or third persons), 8.4(c) and 8.4(g) of the Rules of Professional Conduct.

Count XIII (A-C)
Respondent represented three clients in a civil rights action filed on February 26, 2002 in the United States District Court for the Middle District of Louisiana. The magistrate judge recommended the complaint be dismissed as frivolous and for failure to state a claim upon which relief can be granted, and respondent filed an objection on behalf of his clients. In April 2002, the chief judge dismissed the complaint and ordered respondent to show cause why sanctions should not be imposed on him for violating the Federal Rules of Civil Procedure. Respondent addressed the court but was ultimately sanctioned.[8] Respondent failed to comply with the sanction and was ordered to appear in court on September 5, 2003 to explain his failure. When respondent failed to appear, he was ordered to show cause why he should not be held in contempt of court and show cause why he should not be suspended from practicing before the Middle District of Louisiana. Respondent failed to appear at the October 3, 2003 contempt hearing, and on November 4, 2003, he was suspended from practicing in the Middle District until further notice.
On November 12, 2003, the United States District Court for the Eastern District of Louisiana received notice of respondent's suspension in the Middle District. The Eastern District ordered respondent to show cause why it should not impose the same discipline, but respondent failed to respond. On January 9, 2004, the Eastern District imposed reciprocal discipline retroactive to the date of the Middle District's order.
In February 2004, the ODC notified respondent of allegations of misconduct stemming from the above suspensions. Despite receiving the notice at an address in Virginia, respondent failed to respond.
The ODC alleges respondent's conduct in this matter violated Rules 3.4(c) and *1076 8.1(c) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
The ODC further alleges respondent's conduct in all of the above matters constitutes a violation of Rule 8.4(a) (violation of the Rules of Professional Conduct) of the Rules of Professional Conduct.

DISCIPLINARY PROCEEDINGS
Respondent was served with the formal charges via certified mail,[9] but he failed to answer or otherwise reply thereto. Accordingly, the factual allegations contained in the formal charges were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. The ODC submitted its evidence on July 8, 2004. Respondent filed nothing for the hearing committee's consideration.

Hearing Committee Recommendation
After reviewing the ODC's submission, the hearing committee found that respondent has apparently abandoned his practice and moved to Virginia without proper notice to his clients in violation of Rules 1.3 and 1.16(d). Prior to that, respondent engaged in prohibited business transactions with a client in violation of Rule 1.8. On numerous occasions, he failed to provide to medical providers funds withheld from his clients' settlements in violation of Rule 8.4(c). Respondent also failed to cooperate with the ODC in an investigation of his financial records in violation of Rule 8.4(g). He further allowed pleadings to be dismissed for failure to pay costs in violation of Rules 1.3 and 8.4(d). Respondent has been held in contempt of court for failure to abide by court orders and failure to pay sanctions in violation of Rules 3.4(c) and 8.4(d). Finally, respondent settled a client's lawsuit without notifying her in violation of Rules 1.2 and 1.4.
The committee determined that the baseline sanction in this matter is permanent disbarment. With respect to aggravating and mitigating factors, the committee stated, "[b]ecause of Respondent's failure to respond, there are no further aggravating nor mitigating circumstances which would have an effect upon the imposed sanctions."
Based on these findings, the committee recommended respondent be permanently disbarred and be assessed with all costs of these proceedings.
Neither respondent nor the ODC filed an objection to the hearing committee's recommendation.

Disciplinary Board Recommendation
After reviewing the record, the disciplinary board determined that the deemed admitted facts as found in the formal charges are not manifestly erroneous. In Count I, the board found Rule 1.8 was not violated because nothing in the record establishes that Mr. Hopper reasonably believed respondent was acting as his attorney at the time the investments were made. In Count II(A-H), the board found that respondent violated Rule 8.4(c) when he converted third-party funds to his own use. In Count II(I), the board found that respondent violated Rule 8.4(g) when he failed to provide the ODC with his trust account records. In Count III, the board found that respondent violated Rules 1.3, 1.16(d), 8.4(c), and 8.4(d). Respondent *1077 failed to timely request service of the Cobbs' petition, chose not to pay the appeal costs in light of settlement negotiations, and failed to complete the settlement. Thereafter, respondent failed to withdraw from the case before relocating to Virginia and gave misleading statements to the ODC regarding the settlement offer. In Count IV, the board found that respondent violated Rule 8.4(g) by failing to respond to the ODC's request for additional information. In Count V, the board found that respondent violated Rules 1.3, 1.4, and 1.16(d) when he failed to return Ms. Gauthier's calls, failed to keep her informed of her case, failed to permit her to participate in the direction of her case, and failed to withdraw from her case. In Count VI, the board found that respondent violated Rules 3.4(c) and 8.4(d). His neglect caused the defendants to incur unnecessary legal expenses, which he then failed to reimburse pursuant to the court's order. He also failed to appear for a related show cause hearing. In Count VII, the board found that respondent violated Rules 1.2, 1.4, and 8.4(g) by settling Ms. Holland's case without her consent and failing to respond to the allegations of her complaint. In Count VIII, the board found that respondent violated Rules 1.3, 1.4, 1.16(d), and 8.4(c). Respondent failed to timely file Ms. Malbrough's suit and failed to advise her that her claim had prescribed and that she may have a legal malpractice claim against him. He also told the ODC and Ms. Malbrough that suit had been filed when it had not. Furthermore, respondent failed to withdraw from the case before relocating to Virginia. In Count IX, the board found that respondent violated Rules 1.3, 1.4, 1.16(d), and 8.4(g) when he failed to communicate with Mr. Wells, take any action on the case, withdraw from the case, return Mr. Wells' file, and respond to the complaint. In Count X, the board found that respondent violated Rules 1.3, 1.4, 1.16(d), and 8.4(g) by failing to communicate with Ms. Coats, take any action on her case, withdraw from her case, return her file, or respond to the complaint. In Count XI, the board found that respondent violated Rules 1.3, 1.4, 1.16(d), and 8.4(g) again by failing to communicate with Ms. Washington, take any action on her case, withdraw from the case, return her file, or respond to the complaint. In Count XII, the board found that respondent violated Rules 1.15(a), 8.4(c), and 8.4(g). He commingled and converted client and/or third-party funds. He used his trust account, which was overdrawn over a three-year period, as his operating and personal account. He also failed to provide the ODC with his trust account records. In Count XIII (A-C), the board found that respondent violated Rules 3.4(c) and 8.1(c). He failed to appear for two show cause hearings in the Middle District and received reciprocal discipline by the Eastern District. He also failed to respond to the ODC regarding this discipline. Finally, the board found that respondent violated Rule 8.4(a) by his violations of the other Rules of Professional Conduct.
Based upon these findings, the board determined that respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and as a professional. His conduct harmed his clients, the public in the form of Baton Rouge Physical Medicine & Rehabilitation, the legal system by ignoring court orders, and the profession by failing to cooperate with the ODC. According to the ABA's Standards for Imposing Lawyer Sanctions, the baseline sanction is disbarment.
Aggravating factors found by the board are prior disciplinary offenses (Count IX resulted from an unsuccessful diversion to the Practice Assistance Counsel), dishonest or selfish motive, a pattern of misconduct, *1078 multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, and substantial experience in the practice of law (admitted 1989). The board recognized respondent's partial restitution in Counts II and VI as a mitigating factor.
In determining an appropriate sanction, the board considered the case of In re: Condoll, 01-3106 (La.1/24/03), 840 So.2d 502, in which an attorney was permanently disbarred for nine counts of knowing and intentional misconduct involving incompetence, neglect, failure to abide by the scope of representations, failure to communicate, failure to execute a written contingency contract, failure to refund unearned fees, failure to place disputed fees in trust, failure to maintain a client trust account, commingling and conversion, failure to protect client interests upon termination of the representation, knowingly making a false statement, failure to cooperate with the ODC, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation with numerous aggravating factors. The court in Condoll relied upon Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) of the permanent disbarment guidelines in imposing the sanction.
Based upon the above findings, the board recommended respondent be permanently disbarred, make restitution to Ms. Cobbs in the amount of $2,500, satisfy court-ordered payments, and be assessed with all costs of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992).
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
Based on the deemed admitted facts and other evidence in the record, we find respondent violated the Rules of Professional Conduct as determined by the disciplinary board in Counts II through XIII. Respondent neglected legal matters then abandoned his law practice in Louisiana without protecting his clients' interests. Prior to relocating, respondent intentionally used his client trust account as his personal and business account, resulting in numerous instances of commingling and conversion. The trust account records reveal that he commingled at least $7,164.26 of his own funds with trust account funds. The records also indicate he converted at least $31,561.02 and possibly converted an additional $97,030. The records *1079 further indicate that he deposited several client settlement checks into the account but did not pay most client and third-party funds from the account. Respondent also knowingly disobeyed court orders on numerous occasions, resulting in sanctions and his suspension from practice in federal court in both the Middle and Eastern Districts of Louisiana. Finally, unlike the board, we find a violation of Rule 1.8 with respect to Count I. The record reveals that Mr. Hopper believed he and respondent had an on-going attorney-client relationship at the time he provided collateral for respondent's business loan. As such, respondent engaged in a conflict of interest by entering into a business relationship with his client.
Having found professional misconduct, the sole issue presented for our consideration is the appropriate sanction for respondent's misconduct. In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La. 1984).
Respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and as a professional, causing serious harm. Several aggravating factors are present, including dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, and substantial experience in the practice of law.[10] The sole mitigating factor is partial restitution.
Under these circumstances, there appears to be little doubt that the proper sanction for respondent's misconduct is disbarment. Thus, the sole remaining issue to be resolved is whether respondent's misconduct is so egregious that he should be permanently prohibited from seeking readmission to the practice of law.
Supreme Court Rule XIX, Appendix E, Guideline 1 indicates that permanent disbarment is warranted when an attorney engages in "[r]epeated or multiple instances of intentional conversion of client funds with substantial harm." The record clearly demonstrates respondent engaged in multiple instances of conversion, converting at least $31,000 of client funds to his own use.[11]
In In re: Deshotels, 03-2060 (La.12/12/03), 863 So.2d 507, this court imposed permanent disbarment on an attorney charged with conversion of $38,500 in client and third-party funds, coupled with numerous counts of other misconduct, including neglect of legal matters, failure to communicate with clients, disobedience of court orders, failure to protect client files, and failure to account for or refund unearned *1080 fees. In imposing permanent disbarment, the court stated:
We do not lightly impose permanent disbarment. Nonetheless, we are firmly convinced that we would be derelict in our constitutional duty to regulate the practice of law if we did not impose that sanction under the instant facts. Respondent's actions demonstrate he lacks the requisite moral fitness to practice law in this state. Respondent has disregarded and ignored his obligation to uphold the high standards of honesty and righteousness that he assumed when he took the oath as a member of the bar of this state. Louisiana State Bar Ass'n v. Haylon, 250 La. 651, 198 So.2d 391, 392 (1967). He has used his law license not to foster the high standards of the profession, but to exploit his clients for his own benefit. This court cannot and will not tolerate such conduct. Respondent's actions convincingly demonstrate he does not possess the requisite moral fitness to practice law in this state. He must be permanently disbarred.
Respondent's conduct in the instant matter is strikingly similar to the misconduct in Deshotels. Taken as a whole, respondent's actions establish that he lacks the requisite honesty and integrity to practice law in this state. In particular, respondent's extensive mishandling of his client trust account demonstrates that he poses a threat of harm to the public in the event he is permitted to resume practicing law. In order to protect the public, we find he must be permanently disbarred.
Accordingly, we will accept the disciplinary board's recommendation and permanently disbar respondent.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Philip M. Bradley, Louisiana Bar Roll number 19284, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to make full restitution to his victims, including but not limited to Terri Lynn Cobbs in the amount of $2,500, and to satisfy all court orders that were subjects of these proceedings. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] Respondent has been ineligible to practice law in this state since September 4, 2003 for failing to pay his bar dues and the disciplinary assessment. He has been ineligible since June 2, 2004 for failing to comply with mandatory continuing legal education requirements.
[2] In response to the disciplinary complaint filed by Mr. Hopper's new attorney, respondent indicated he did not dispute that he owed Mr. Hopper money. As such, he did not contest or even answer the lawsuit filed against him. This resulted in a preliminary default judgment against respondent, which Mr. Hopper has apparently not yet confirmed.
[3] Defense counsel informed the ODC that they withdrew the settlement offer because respondent failed to communicate with them regarding same.
[4] On August 22, 2000, the clerk's office received respondent's notice of appeal but did not file same because it was not signed by Mr. Noel's local counsel, as required by the rules of court. Therefore, on August 25, 2000, Mr. Noel filed a pro se notice of appeal. On September 8, 2000, the defendants filed a motion with the United States Court of Appeals to dismiss Mr. Noel's appeal because it was not filed within thirty days of the granting of summary judgment. On September 25, 2000, Mr. Noel filed a motion to extend time for filing the notice of appeal, which was granted on October 12, 2000, but he neglected to serve the defendants with a copy of the motion. On the defendants' motion, the October 12, 2000 order was vacated and oral argument was scheduled for November 16, 2000. However, respondent did not appear, and the hearing was continued until November 27, 2000. On that date, respondent appeared and admitted his neglect had caused the defendants to incur substantial legal expense.
[5] The following are examples of commingling found in respondent's trust account:

1) a $25 transfer on July 8, 1997 from respondent's office account to cover overdrafts;
2) a $12.26 transfer on September 16, 1997 from respondent's office account to cover overdrafts;
3) a $1,677 check from Reid's Seafood, Inc. (respondent's side business) deposited on June 12, 1998;
4) a $700 check from Thasia Brooks Bradley (apparently respondent's wife) deposited on September 8, 1998;
5) a $750 check from Thasia Brooks Bradley deposited on October 8, 1998; and
6) a $4,000 check made payable to Thasia B. Bradley from Southeastern Securities, Inc. deposited on June 19, 2000.
[6] Examples of possible conversion include the following:

1) a total of $13,230.16 transferred from respondent's trust account to respondent's office account or Reid's Seafood, Inc. account to cover overdrafts in those accounts;
2) a $585 check made payable to Louisiana Seafood Exchange, Inc. on December 5, 1997;
3) a $325 check made payable to LTLA on December 9, 1997;
4) a $200 check made payable to Thasia Bradley on November 6, 1998;
5) a $517.57 check made payable to BellSouth on March 8, 2000 for respondent's telephone bill;
6) a $641.64 check made payable to BellSouth on March 8, 2000 for a telephone bill;
7) a $5,460 check made payable to respondent's bank on March 14, 2000;
8) a $315 check made payable to BellSouth on April 11, 2000 for a telephone bill;
9) a $1,097.65 check made payable to Data Transfer, Inc. on June 13, 1999; and
10) Forty-six checks totaling $91,570 made payable to respondent for unspecified reasons.
[7] The record also revealed that out of thirty-six client settlement checks deposited into the trust account, only seven clients were paid their portions of their settlements with checks from the trust account.
[8] Respondent was required to attend a seminar on litigation of constitutional claims within the next twelve months and provide the court with verification of his attendance.
[9] The certified mail was delivered to respondent on April 2, 2004 at two different addresses in West Point, Virginia. Both return receipt cards were signed by respondent personally.
[10] We question the board's finding of prior discipline as an aggravating factor. In finding prior discipline, the board relied on the unsuccessful diversion of the Wells complaint. However, this complaint later formed the basis of Count IX of these formal charges. As a result, we do not believe it should be treated as prior discipline.
[11] Because of respondent's poor record keeping and failure to cooperate with the investigation, the true extent of the harm respondent inflicted upon his clients may never be known.