970 So.2d 970 (2007)
In re Jo Anne FLEMING.
No. 2007-B-0843.
Supreme Court of Louisiana.
December 14, 2007.

*971 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Jo Anne Fleming, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. In re: Fleming, 04-0783 (La.4/7/04), 871 So.2d 1086.

UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC originally filed four sets of formal charges against respondent, consisting of a total of 44 counts of misconduct. Respondent answered the first set of formal charges and denied any misconduct. The factual allegations of the remaining three sets of formal charges were deemed admitted upon respondent's failure to file an answer thereto.
*972 The formal charges were considered by separate hearing committees, then consolidated by orders of the disciplinary board. The board then filed in this court a single recommendation of permanent disbarment encompassing all of the formal charges. In its report, the disciplinary board recommended that the first set of formal charges be dismissed, on the ground that the ODC did not carry its burden of proving the alleged misconduct by clear and convincing evidence. The ODC did not object to the board's recommendation in this regard, and accordingly, the first set of formal charges will not be further discussed herein. Rather, we confine our opinion to the remaining three sets of formal charges, which consist of a total of 42 counts of misconduct, as follows.

FORMAL CHARGES

02-DB-058

Count I  The Williams Matter
Virginia Williams paid respondent $1,500 plus court costs for representation in a child support matter. Ms. Williams had great difficulty communicating with respondent. Respondent did not complete the representation and did not refund any portion of the fee. She also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Williams.

Count II  The Wently Matter
Adlean Wently paid respondent $2,000 to represent her before the Planning Commission. Ms. Wently had great difficulty communicating with respondent, and terminated the representation; however, respondent refused to refund any unearned fees. She also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Wently.

Count III  The Minor Matter
Ingrid Minor paid respondent $2,500 to represent her in a child custody and visitation matter. Ms. Minor had great difficulty communicating with respondent, and terminated the representation; however, respondent refused to refund any unearned fees.

Count IV  The Rogers Matter
Margaret Rogers paid respondent $1,500 plus court costs to represent her in a divorce and related matters. Respondent did not complete the representation, nor refund any fees.

Count V  The Knatt Matter
Dr. Theodore Knatt paid respondent $25,000 to represent him in a custody matter. Dr. Knatt discharged respondent several months later, but respondent delayed the return of the file for some months, and refused to refund any fees. She also failed to cooperate with the ODC in its investigation of the complaint filed by Dr. Knatt.

Count VI  The Nezianya Matter
Francis Nezianya paid respondent $3,250 to represent him in a divorce and to handle the incorporation of a business. Respondent did not complete the representation, nor refund any fees.

Count VII  The Dawkins Matter
Cornelia Dawkins paid respondent $10,000 to represent her in divorce, custody, and support matters. Ms. Dawkins discharged respondent because of delays and communication problems, but respondent refused to refund any fees.

Count VIII  The Hutchinson Matter
Ora Hutchinson paid respondent $1,000 towards a total fee of $15,000 to handle a criminal matter, then could not pay the remainder of the fee and requested a refund. Respondent refused to comply with Ms. Hutchinson's request. She also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Hutchinson.

*973 Count IX  The James Matter

Mr. and Mrs. Robert James paid respondent $2,500 to handle a child custody matter. After continuing problems with communication and no evidence of progress in the matter, Mr. and Mrs. James terminated respondent's representation and requested a refund of the fee they paid. Respondent refused to refund the fee.
The ODC alleges that respondent's conduct in 02-DB-058 violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(f)(6) (failure to refund an unearned fee), 1.16(d) (obligations upon termination of the representation), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(g) (failure to cooperate with the ODC in its investigation).

02-DB-119

Count I  The Ceasar Matter
Constance Whitley Ceasar paid respondent $5,000 to handle a child custody case. Following an adverse ruling in the case, respondent filed an untimely writ application on behalf of Ms. Ceasar and did not follow the applicable rules of the court of appeal. As a result, the court of appeal refused to consider Ms. Ceasar's writ application. Respondent did not notify Ms. Ceasar of this action until three months later. Ms. Ceasar terminated respondent's representation and requested a refund of the fee she paid; however, no refund or accounting was provided.

Count II  The Sanders Matter
Eric Sanders paid respondent $1,000 to investigate a criminal charge pending against his nephew. Despite numerous requests, respondent did not communicate with the family. Following the termination of her representation, respondent refused to refund any fees or provide an accounting to her clients. She also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Sanders.
The ODC alleges that respondent's conduct in 02-DB-119 violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.3, 1.4, 1.16(d), 8.1(c), and 8.4(g).

05-DB-081

Count I  The Richardson Matter
Donald Richardson paid respondent $2,500 to represent him in a domestic matter. Mr. Richardson had great difficulty communicating with respondent, and terminated the representation; however, respondent refused to refund any unearned fees. She also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Richardson.

Count II  The Stewart Matter
Ellen Stewart paid respondent $1,000 to defend her in a garnishment matter. Following numerous unsuccessful attempts to contact respondent, Ms. Stewart requested in writing the return of the fee she paid. Respondent failed to respond to Ms. Stewart's request. She also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Stewart.

Count III  The Gilyard Matter
Isaac Gilyard, Jr. paid respondent a total of $14,500 to handle a divorce and ancillary matters. Respondent failed to communicate with Mr. Gilyard and neglected his various legal matters. She also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Gilyard.

Count IV  The Miles Matter
Sharon Miles paid respondent $7,500 to handle a divorce and community property *974 settlement. Ms. Miles' phone calls and requests for information were ignored by respondent, and Ms. Miles requested a refund of the attorney's fees she paid. Respondent failed to provide a refund. She also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Miles.

Count V  The Price Matter
James Price paid respondent $1,500 to handle a community property dispute. After numerous failed attempts to contact respondent, Mr. Price requested a refund of the attorney's fee he paid. Respondent failed to provide a refund. She also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Price.

Count VI  The Richard Matter
Romeekia Richard paid respondent $2,500 to represent her at a school board hearing. After many continuances of the hearing due to respondent's illness or because of scheduling conflicts (during which time Ms. Richard was suspended without pay pending each new hearing date), respondent advised Ms. Richard not to attend the last hearing date scheduled since respondent had not received notice. As a result of the non-attendance, Ms. Richard was terminated from her job. The school board attorney provided records evidencing proper notice of the hearing to respondent. Respondent advised she would seek an appeal, but failed to do so, and Ms. Richard was forced to hire new counsel after repeated unsuccessful attempts to contact respondent. Ms. Richard sent a termination letter to respondent with a request for her file and a return of fees, to which respondent did not reply. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Richard.

Count VII  The Judson Matter
Isadore Judson paid respondent $1,650 to handle a divorce and to prepare his will. Over the next year, Mr. Judson made numerous attempts to contact respondent, all to no avail. Mr. Judson then learned that his wife had obtained a judgment of divorce. Respondent did not comply with Mr. Judson's request for the return of his file and a refund of fees, nor did she provide any services in connection with the will. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Judson.

Count VIII  The Veal Matter
In February 2003, Chette Veal paid respondent $1,500 to appear on his behalf at a March 10, 2003 hearing on a motion to increase child support. On March 11, 2003, respondent informed Mr. Veal that the motion to increase support had been denied because he had not been properly served with the motion. On March 13, 2003, Mr. Veal received a bench warrant notification from the Support Enforcement Agency advising that no one was present at the hearing, and that his child support obligation had been increased from $111 to $446.25 a month, effective immediately. Mr. Veal then learned that respondent had never contacted the agency to advise of her representation. By letter dated March 19, 2003, Mr. Veal terminated respondent's representation and requested that she refund the attorney's fee he paid. Respondent did not comply with Mr. Veal's request until May 2003. She also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. and Mrs. Veal.

Count IX  The Stevens Matter
Ida Stevens paid respondent $6,000 to represent her at a school board hearing. Respondent requested a continuance of the hearing without Ms. Stevens' permission, resulting in her suspension without pay pending a new hearing date. Respondent assured Ms. Stevens that she would appear *975 at the hearing and that there was no need for Ms. Stevens to attend. However, respondent failed to appear at the hearing, and as a result, Ms. Stevens was terminated from her job. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Stevens.

Count X  The Marshall Matter
Willie Marshall paid respondent $1,000 to handle a property matter. Thereafter, respondent failed to return Mr. Marshall's phone calls or perform any work in furtherance of the representation. She also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Marshall.

Count XI  The Gilmore Matter
Sheryl Gilmore retained respondent to pursue a products liability matter. After numerous unsuccessful attempts to contact respondent, Ms. Gilmore terminated the representation and hired new counsel. Thereafter, respondent ignored requests to provide Ms. Gilmore's file to her counsel. She also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Gilmore.

Count XII  The Videau Matter
Jeanette Videau paid respondent $4,925 towards a $5,000 fee to investigate the circumstances surrounding her son's imprisonment in Texas. The fee was to cover respondent's round-trip visit to the prison, courts costs to obtain records, and other expenses involved. Four months later, respondent advised Ms. Videau that she would require a $30,000 fee to take on the representation. Respondent did not provide the services agreed upon for the original fee. Ms. Videau was unsuccessful in numerous attempts to contact respondent by phone and mail. Respondent did not comply with Ms. Videau's written request for an accounting and itemization of services, nor did she cooperate with the ODC in its investigation of the complaint filed by Ms. Videau.

Count XIII  The Hammond Matter
Carolyn Hammond paid respondent $2,500 to represent her in a child support matter. After numerous unsuccessful attempts to contact respondent, Ms. Hammond terminated the representation and requested the return of her file and a refund of fees. Respondent failed to comply with Ms. Hammond's request. She also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Hammond.

Count XIV  The Martin Matter
Lawrence Martin paid respondent $2,300 towards a $5,000 fee to represent him in a DWI matter. Respondent failed to appear for scheduled hearings in the case, failed to communicate with Mr. Martin, and failed to perform any services on his behalf, forcing Mr. Martin to hire another attorney. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Martin.

Count XV  The Haysbert Matter
Alex Haysbert, Jr. paid respondent $3,500 to represent him in a paternity suit. Respondent appeared at the first hearing in the case solely to request a continuance. After numerous requests, respondent met with Mr. Haysbert for only 15 minutes to prepare for the next hearing. On the date of the hearing, respondent appeared just before the case was called, and Mr. Haysbert alleges that respondent did not adequately cross-examine plaintiff, and did not allow Mr. Haysbert to testify. The judge ruled against Mr. Haysbert. Respondent offered no explanation for the ruling but told Mr. Haysbert she would meet with him later. After numerous attempts to contact respondent, Mr. Haysbert went to respondent's office and was given the next hearing date, but no other information. When Mr. Haysbert arrived in court, he *976 was advised that the case was not going to be heard, and he was ordered to pay $3,000 to the opposing attorney due to respondent's delays. After several more failed attempts to reach respondent by telephone, and a certified mailing to respondent which was never claimed, Mr. Haysbert filed a disciplinary complaint. Respondent failed to cooperate with the ODC in its investigation of the complaint.

Count XVI  The Fleming Matter
Michael Fleming paid respondent $1,500 to represent him in a divorce matter.[1] Early in the representation, respondent advised that she was working on the case, but Mr. Fleming's subsequent attempts to contact her were unsuccessful, and ultimately he discovered that respondent's telephone had been disconnected. To Mr. Fleming's knowledge, respondent performed no work on his behalf. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Fleming.

Count XVII  The Chase Matter
John Chase hired respondent to represent him in a class action lawsuit against Exxon. Despite attempts to contact respondent, Mr. Chase was unable to communicate with her regarding the status of his case. Mr. Chase eventually found respondent's phone disconnected and her office closed. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Chase.

Count XVIII  The Jimison Matter
Johnson Jimison paid respondent $1,500 to handle a visitation and child support matter. Following a hearing, respondent was instructed by the trial judge to submit a judgment for his signature within ten days. Mr. Jimison did not receive the judgment from respondent and was unable to reach her regarding the matter, despite his numerous attempts to contact her by phone, fax, and certified mail. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Jimison.

Count XIX  The Miller Matter
Emma Tate Miller paid respondent $2,500 to represent her in a divorce proceeding. Respondent appeared at one hearing in the case, but failed to appear at the next scheduled hearing. Despite numerous phone calls and letters, Ms. Miller was unable to communicate with respondent about her case. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Miller.

Count XX  The Young Matter
Jason Young paid respondent $1,500 to represent him in a divorce matter. Despite numerous attempts to contact respondent, Mr. Young was unable to communicate with her about his case. Respondent did no work in furtherance of the divorce, and did not refund Mr. Young's fee. She also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Young.

Count XXI  The Wicker Matter
Frederick Wicker, Sr. paid respondent $1,500 to represent him in a child support and community property matter. Mr. Wicker was later unable to contact respondent, and knowing of no work she had done on his behalf, he was forced to hire other counsel to represent him. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Wicker.

Count XXII  The Himel Matter
Nearylyn Himel hired respondent to represent her in a class action case against a prescription drug manufacturer. Ms. *977 Himel gave respondent all of her original records needed to support the claim, but she never received copies of the documents from respondent. Numerous attempts by Ms. Himel to contact respondent were unsuccessful, and on her last attempt, she discovered that respondent's telephone was disconnected. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Himel.

Count XXIII  The Mitchell Matter
Clem Mitchell, Jr. hired respondent to represent him in a child support matter. Respondent failed to appear in court at a scheduled hearing in the case and failed to contact Mr. Mitchell regarding the matter. Respondent's neglect of the case resulted in the garnishment of Mr. Mitchell's retirement, and an appropriate appeal was not filed. Furthermore, respondent had previously represented Mr. Mitchell's opposing party, but she failed to inform him of the conflict. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Mitchell.

Count XXIV  The Spears Matter
George Spears paid respondent $47,000 to represent him in a criminal matter. An additional $8,000 was collected by respondent for payment to a bail bondsman. Mr. Spears subsequently advised respondent that he was not going to pay any additional fees as he was unaware of any work accomplished toward his representation. Thereafter, respondent refused to return Mr. Spears' telephone calls. Despite repeated attempts, Mr. Spears was unable to communicate with respondent, and on his last attempt, he discovered that respondent's telephone had been disconnected. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Spears.

Count XXV  The Turner Matter
Shawn Turner and his mother, Carolyn Turner, hired respondent to represent them in a class action lawsuit against Exxon. Thereafter, the Turners received no further information regarding their case, and despite numerous attempts, they were unable to contact respondent. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by the Turners.

Count XXVI  The Davis Matter
Claudia Davis hired respondent to represent her in a claim for damages against a prescription drug manufacturer. Despite numerous attempts, Ms. Davis was unable to communicate with respondent about her case. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Davis.

Count XXVII  The Judson Matter
In 1998, Alene Judson paid respondent $1,500 to represent her in a community property matter. Ms. Judson made numerous unsuccessful attempts to contact respondent regarding her case. She eventually learned that respondent's office was permanently closed. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Judson.

Count XXVIII  The Unauthorized Practice of Law Matter
By order dated December 10, 2003, this court transferred respondent to interim disability inactive status pending a hearing to determine the validity of her claim that she was then unable to defend the disciplinary proceedings against her due to mental or physical incapacity.[2] Notwithstanding *978 that she was unable to practice law at this time, respondent appeared in the East Baton Rouge Parish Family Court on December 17, 2003 on behalf of her client, Alfred Lee. On December 18, 2003, respondent appeared in the Baton Rouge City Court on behalf of Mr. Lee. Respondent also failed to cooperate with the ODC in its investigation of the complaints filed against her in this matter.

Count XXIX  The Davis Matter
Charles L. Davis, Jr. paid respondent $7,500 to represent him in a divorce, and $14,000 to handle a community property settlement. Mr. Davis alleges the divorce took longer than necessary to obtain, and after two years nothing was done with respect to the community property settlement. Despite numerous attempts, Mr. Davis was unable to communicate with respondent. Furthermore, Mr. Davis was never advised of respondent's 2004 interim suspension, or of the fact that she could no longer represent him. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Davis.

Count XXX  The Rambo Matter
Following her divorce, Juanita Quarles Rambo was sued by her former husband, who alleged that Ms. Rambo had made misrepresentations in documents in which he relinquished his status as beneficiary of Ms. Rambo's retirement benefits. In June 2001, Ms. Rambo paid respondent $7,500 towards a $15,000 fee to defend her in the lawsuit. Between 2001 and 2002, Ms. Rambo received correspondence from respondent, but she did not receive any pleadings, and no court appearances were scheduled. In October 2003, respondent requested and Ms. Rambo paid an additional $2,500. Ms. Rambo heard nothing further from respondent. In February 2004, respondent left a message with Ms. Rambo's son that she was ill and that another attorney would complete the matter. No further contact was made by respondent or other counsel. In January 2005, Ms. Rambo sent a letter of termination and a request for refund of fees to respondent, but the mailing was returned as "undeliverable." Ms. Rambo received no services for the $10,000 fee she paid, and she is unaware of the status of her case. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Rambo.

Count XXXI  The Rogers Matter
Roberta Rogers paid respondent $1,500 towards a $2,500 fee to handle a child custody and visitation matter. To Ms. Rogers' knowledge, respondent performed no work on her behalf, and she did not receive a refund of the fee she paid. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Rogers.
The ODC alleges that respondent's misconduct in 05-DB-081 violated the following provisions of the Rules of Professional Conduct: Rules 1.1, 1.2 (scope of the representation), 1.3, 1.4, 1.5(f)(5) (failure to refund an unearned fee), 1.7 (conflict of interest), 1.16(d), 3.2 (failure to make reasonable efforts to expedite litigation), 5.5(a) (engaging in the unauthorized practice of law), 8.1(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

HEARING COMMITTEE REPORTS

02-DB-058
After consideration of the ODC's submission in response to the deemed admitted order, the hearing committee found that respondent violated the Rules of Professional *979 Conduct as alleged in the formal charges. The committee determined that respondent's misconduct was knowing and intentional, and that she caused actual injury to her clients, particularly by failing to refund unearned fees. The committee recommended that respondent be suspended from the practice of law for eighteen months.
Neither respondent nor the ODC filed an objection to the hearing committee's recommendation in 02-DB-058.

02-DB-119
After consideration of the ODC's submission in response to the deemed admitted order, the hearing committee found that respondent violated the Rules of Professional Conduct as alleged in the formal charges. In light of the aggravating factors present, and given the absence of mitigating circumstances, the committee recommended that respondent be suspended from the practice of law for one year and one day.
Neither respondent nor the ODC filed an objection to the hearing committee's recommendation in 02-DB-119.

05-DB-081
After consideration of the ODC's submission in response to the deemed admitted order, the hearing committee found that respondent violated the Rules of Professional Conduct as alleged in the formal charges. The committee determined that respondent engaged in a consistent and alarming pattern of accepting legal fees and then abandoning her clients, causing undue delay and seriously jeopardizing her clients' legal matters. Respondent failed to properly account for or refund thousands of dollars in unearned legal fees, and has deprived her clients of the funds rightfully owed them. She also violated the terms of a prior disciplinary order by practicing law while on disability inactive status and failed to cooperate with the ODC in its investigation of the numerous complaints against her. The committee found that the totality of respondent's misconduct was so egregious that it warranted the sanction of disbarment, with restitution of all unearned fees, and payment of all costs of the proceedings.
The ODC filed an objection to the hearing committee's recommendation, urging that permanent disbarment is appropriate.

DISCIPLINARY BOARD RECOMMENDATION

02-DB-058, 02-DB-119 & 05-DB-081
The disciplinary board agreed that the records of these matters support a finding that respondent violated the Rules of Professional Conduct as charged in the formal charges. The board found that respondent violated duties owed to her clients, the public, the legal system, and the legal profession; given the pattern and magnitude of her conduct, respondent's actions can only be described as intentional. By abandoning her practice, neglecting her clients, failing to return unearned fees, and engaging in the unauthorized practice of law, the board found respondent's actions caused, and had the potential to further cause, serious injury to her clients and the legal profession. The board also recognized that the disciplinary system has been harmed by respondent's lack of cooperation in the investigative process, as additional expenses were incurred and the agency's limited resources depleted when the ODC had to repeatedly request that she respond to complaints and other requests for information.
The board found the following aggravating factors are present: prior disciplinary *980 offenses,[3] dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, substantial experience in the practice of law (admitted 1984), and indifference to making restitution. No mitigating factors were found by the board.
As a sanction for respondent's misconduct, the board recommended that the court impose permanent disbarment.[4] Guideline 1 of the permanent disbarment guidelines states that permanent disbarment may be warranted when an attorney engages in repeated or multiple instances of intentional conversion of client funds. Here, respondent has taken on the representation of numerous clients and accepted their money as fees, only to neglect their cases and fail to account to the clients or return their unearned fees. Such conduct constitutes conversion for the purposes of Guideline 1. See In re: Deshotels, 03-2060 (La.12/12/03), 863 So.2d 507 (". . . [R]espondent's failure to account for and refund unearned fees paid by his clients resulted in a conversion of those funds to the detriment of his clients. Therefore, we find respondent's conduct falls within the scope of this guideline.").
In sum, the board concluded:
In the consolidated matter at bar, the Respondent has neglected the cases of no less than thirty-nine clients and has taken but failed to account for and/or return approximately $164,945.00 in fees. Her actions can be described as nothing less than intentional conversion, resulting in great harm to her clients. Following Guideline 1 and the Court's direction in Deshotels, the Board recommends that the Respondent be permanently disbarred from the practice of law.
Based on this reasoning, the board recommended that respondent be permanently disbarred, that she be ordered to provide an accounting and/or make appropriate restitution to her clients, and that she be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest *981 error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record of this deemed admitted proceeding supports the factual findings of the hearing committees, as modified by the disciplinary board. The record reveals that respondent violated multiple Rules of Professional Conduct by failing to act with reasonable diligence and promptness in representing her clients, failing to communicate with her clients, failing to comply with her obligations upon the termination of her representation, failing to make reasonable efforts to expedite litigation, failing to provide competent representation, failing to return unearned fees, engaging in conduct prejudicial to the administration of justice, engaging in a conflict of interest, engaging in the unauthorized practice of law, and failing to cooperate with the investigation of disciplinary matters.
Having found professional misconduct, we now turn to a discussion of an appropriate sanction. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
The record demonstrates that respondent knowingly and intentionally violated duties owed to her clients, the public, the legal system, and the profession, causing serious harm. Several significant aggravating factors are present in the instant case, including respondent's refusal to acknowledge the wrongful nature of her conduct, the vulnerability of her victims, and her utter indifference to making restitution, including repaying unearned fees. We are unable to discern any mitigating factors from the record.
Unquestionably, the appropriate sanction for respondent's misconduct is disbarment. The sole remaining question is whether respondent's misconduct is so egregious that she should be permanently precluded from seeking readmission to the practice of law.
In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might result in permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment. In re Frank, 06-0727 (La.10/17/06), 942 So.2d 1050.
Guideline 1 applies to "repeated or multiple instances of intentional conversion of client funds with substantial harm." Respondent's conduct clearly falls within the scope of that guideline. The voluminous record of this proceeding demonstrates respondent has engaged in a pattern of collecting fees from at least thirty-nine clients without performing any work and without refunding the unearned fees, essentially converting the fees to her own use. The aggregate amount of the converted fees is nearly $165,000.
We do not lightly impose the sanction of permanent disbarment. In re Shortess, 06-1580 (La.1/17/07), 950 So.2d 570; In re: Gros, 03-3076 (La.4/23/04), 871 So.2d 1091; In re: Morphis, 01-2803 (La.12/4/02), 831 So.2d 934. Nonetheless, we are firmly convinced that we would be *982 remiss in our constitutional duty to regulate the practice of law if we did not impose that sanction here. Respondent has used her law license as a pretext to steal money from the citizens of this state. Her actions convincingly demonstrate that she does not possess the requisite moral fitness to practice law in this state. She must be permanently disbarred.

DECREE
Upon review of the findings and recommendations of the hearing committees and the disciplinary board, and considering the record, it is ordered that the name of Jo Fleming a/k/a Jo Anne Fleming, Louisiana Bar Roll number 8393, be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to furnish complete accountings and full restitution to all persons subject of the formal charges. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] It does not appear from the record that Mr. Fleming is related to respondent.
[2] Following the hearing, this court found that respondent's claim of inability to defend was invalid. Accordingly, on March 24, 2004, respondent was reinstated to active status from interim disability inactive status. In re: Fleming, 03-3103 (La.3/24/04), 869 So.2d 785.
[3] In 1997, respondent was admonished by the disciplinary board for failing to promptly refund advanced costs paid by her clients in a succession matter.
[4] While the board agreed that respondent engaged in the unauthorized practice of law during the time she was on interim disability inactive status (see Count XXVIII of 05-DB-081), the board correctly declined to consider this conduct as a basis to recommend permanent disbarment. See In re: Pitre, 05-0853 (La.6/17/05), 903 So.2d 1130 (holding that Guideline 8 of the permanent disbarment guidelines did not apply to an attorney who practiced law while ineligible to do so, because he was not suspended or disbarred, nor had he resigned from the bar, as required by the guideline).