*840
 
 |,ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 

 This disciplinary matter arises from formal charges filed by the Office of Disci
 
 *841
 
 plinary Counsel (“ODC”) against respondent, H. Edward Ellzey, Jr., an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public.
 
 In re: Ellzey,
 
 07-0729 (La.4/12/07), 953 So.2d 813.
 

 FORMAL CHARGES
 

 Count I
 
 — The
 
 Ruffin Matter
 

 On July 2, 2004, respondent conducted a real estate closing involving Sheila Ruffin as the seller and Keith Carter as the buyer. At the closing, respondent presented Ms. Ruffin with a HUD-1 settlement statement that reported the buyer as Mr. Carter, a contract sales price of $118,100, and net sales proceeds to Ms. Ruffin of $6,542.11. Ms. Ruffin executed the settlement statement, which also was purportedly signed by Mr. Carter. The funds were to be disbursed on July 7, 2004, but Ms. Ruffin never received the $6,542.11.
 

 In September 2004, Ms. Ruffin filed a disciplinary complaint against respondent with the ODC. In response to the complaint, respondent produced a second HUD-1 settlement statement that reported Elite Solutions as the buyer,
 
 [1]
 
 a | ^contract sales price of $101,697.89, and no net sales proceeds to Ms. Ruffin. This second settlement statement was purportedly signed by Olando Cormier, on behalf of Elite Solutions, and Ms. Ruffin. However, Ms. Ruffin claims that Mr. Cormier was not present at the closing and claims that her signature on the second settlement statement is a forgery.
 

 Furthermore, even though neither settlement statement reported any funds owed to Elite Solutions, on July 6, 2004, respondent issued a check from his Ellzey Title Agency, LLC escrow account payable to Elite Solutions in the amount of $5,928.10, which amount does not match any figures on either settlement statement.
 

 The ODC personally served respondent with a subpoena to take his sworn statement on September 8, 2005. However, the sworn statement was canceled due to Hurricane Katrina. In September 2006, the ODC sent respondent a certified letter requesting that he contact the ODC, which letter respondent signed for and received. Respondent failed to respond, and the ODC has had no communication with respondent since Katrina.
 

 Count II
 
 — The
 
 Commonwealth Matter
 

 Respondent worked as a title agent for Commonwealth Land Title Insurance Company (“Commonwealth”). In or around 2005, respondent was involved in ten loan closings wherein Commonwealth issued insured closing letters to various lenders. Instead of using the funds received at the closings to pay off outstanding mortgages and other debt, respondent converted the funds to his own use. In total, respondent converted approximately $895,000 to his own use. As a result, Commonwealth was forced to make good on these payments.
 

 |sFrom January 1, 2005 through November 30, 2005, respondent’s escrow account revealed multiple overdrafts and non-sufficient funds (“NSF”) charges. One example of respondent’s misuse of his escrow account occurred on September 7, 2005 when the balance of the account fell to negative $93,847.01.
 

 In November 2005, Commonwealth filed a disciplinary complaint against respondent with the ODC. In September 2006, the ODC sent respondent a certified letter
 
 *842
 
 notifying him of the complaint, which letter respondent signed for and received. Respondent failed to respond.
 

 Count III
 
 — The
 
 Lloyd Matter
 

 By way of background, Gwendolyn Lloyd agreed to sell her house to Ronald Lewis under the following conditions: 1) Mr. Lewis was to pay Ms. Lloyd $10,000 at closing; 2) Ms. Lloyd would lease the house back from Mr. Lewis for one year at $1,800 per month; 3) During that year, Mr. Lewis would make repairs and additions to the house; and 4) Ms. Lloyd would repurchase the house from Mr. Lewis at the end of the year. Ms. Lloyd and Mr. Lewis executed a lease purchase agreement setting forth the above conditions.
 

 Respondent was retained to handle the closing, which occurred on December 30, 2004. Deborah King accompanied Mr. Lewis to the closing. Although Ms. Lloyd did not have an agreement with Ms. King, respondent structured the closing with Ms. Lloyd selling the property to Ms. King, not Mr. Lewis. According to the HUD-1 settlement statement, Ms. Lloyd was to receive $91,374 in net sales proceeds. However, despite what respondent reported on the settlement statement, Ms. Lloyd did not receive these proceeds. Pursuant to Ms. Lloyd’s agreement with Mr. Lewis, Mr. Lewis paid Ms. Lloyd $10,000.
 

 ^Respondent failed to properly disburse the loan proceeds and/or failed to pay off Ms. Lloyd’s outstanding mortgage. Consequently, foreclosure proceedings were instituted against Ms. Lloyd with respect to the house she purportedly sold to Ms. King. The property was sold at a sheriffs sale on June 9, 2005 with Mr. Lewis as the winning bidder. However, Mr. Lewis’ check in the amount of $155,161 in payment of the balance of the sheriffs sale purchase price was dishonored for insufficient funds. On December 9, 2005, the sheriffs sale was set aside and all outstanding liens on the property were reinstated.
 

 Apparently, Mr. Lewis and/or Ms. King committed fraud against Ms. Lloyd. Respondent was either directly involved in the fraud or facilitated the fraud as evidenced by the erroneous information listed on the settlement statement. Respondent is believed to have absconded with the loan proceeds and/or converted a portion of the funds to his own use.
 

 DISCIPLINARY PROCEEDINGS
 

 In August 2007, the ODC filed three counts of formal charges against respondent, alleging that his conduct as set forth above violated the following provisions of the Rules of Professional Conduct: Rules 1.15(d) (safekeeping property of clients or third persons), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) .
 

 Respondent was served with the formal charges via certified mail but failed to answer. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity 15to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.
 

 Hearing Committee Report
 

 After considering the ODC’s deemed admitted submission, the hearing committee determined that the facts alleged in the formal charges were deemed admitted and proven by clear and convincing evidence. Based on those deemed admitted facts, the
 
 *843
 
 committee made the following findings: In the Ruffin matter, respondent entered false information on two separate HUD-1 settlement statements, mishandled the sale proceeds, and deprived Ms. Ruffin of funds owed to her pursuant to the original settlement statement. Respondent also failed to cooperate with the ODC in its investigation. In the Commonwealth matter, respondent is believed to have absconded with and/or converted to his own use approximately $895,000. Commonwealth had to pay claims resulting from the ten loan closings of approximately $800,000 and is investigating another claim of more than $100,000. Respondent also failed to cooperate with the ODC in its investigation and failed to timely remit funds owed to third parties. In the Lloyd matter, respondent failed to disburse the loan proceeds and/or failed to pay off Ms. Lloyd’s outstanding mortgage, which led to foreclosure proceedings against Ms. Lloyd. It also appears that Mr. Lewis and Ms. King committed fraud against Ms. Lloyd. Respondent was either directly involved in or facilitated the fraud as evidenced by the erroneous information listed on the HUD-1 settlement statement.
 

 Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges. He intentionally | (¡violated duties owed to his clients, the public, and the legal profession, causing actual and substantial harm to his clients and third parties. Based on the ABA’s
 
 Standards for Imposing Lawyer Sanctions
 
 and the court’s prior jurisprudence, the committee determined that the baseline sanction is disbarment. The committee found the aggravating factors of prior disciplinary offenses
 
 [2]
 
 and substantial experience in the practice of law (admitted 1968). The committee did not find any mitigating factors.
 

 Considering the magnitude of the harm caused by respondent to clients and third parties, and the absence of mitigating factors, the committee recommended that respondent be permanently disbarred.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s report.
 

 Disciplinary Board Recommendation
 

 After review, the disciplinary board determined that the hearing committee’s factual findings are not manifestly erroneous. The board also determined that the committee properly applied the Rules of Professional Conduct and adopted the rule violations found by the committee.
 

 The board determined that respondent knowingly and intentionally violated duties owed to his clients, the public, and the legal profession. He caused actual substantial harm to several parties. The board agreed with the committee that the baseline sanction is disbarment.
 

 In aggravation, the board found prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the 17victims, substantial experience in the practice of law, and indifference to making restitution. The board found no mitigating factors.
 

 Citing Guideline 1 of the permanent disbarment guidelines (repeated or multiple instances of intentional conversion of client funds with substantial harm), the board determined that respondent’s conduct warrants permanent disbarment. In further support of permanent disbarment, the board cited several cases in which this
 
 *844
 
 court has permanently disbarred attorneys who converted substantial amounts of client funds.
 
 [3]
 

 Under these circumstances, the board recommended that respondent be permanently disbarred. The board further recommended that respondent pay restitution.
 

 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Quaid,
 
 94-1316 (La.11/30/94), 646 So.2d 343;
 
 Louisiana State Bar Ass’n v. Boutall,
 
 597 So.2d 444 (La.1992).
 

 In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations | ¡¡contained in the formal charges after those charges have been deemed admitted. . However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations.
 
 In re: Donnan,
 
 01-3058 (La.1/10/03), 838 So.2d 715.
 

 The deemed admitted facts reveal that respondent has engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, has converted client and third party funds in the approximate amount of $895,000, and has failed to cooperate with the ODC in its investigation. The record supports the rule violations as found by the hearing committee and the disciplinary board.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 The record supports a finding that respondent engaged in intentional misconduct. He violated duties owed to his clients, the public, and the legal profession, causing substantial actual harm. The applicable baseline sanction is clearly disbarment under both the ABA’s
 
 Standards for Imposing Lawyer Sanctions
 
 |9and our pri- or jurisprudence.
 
 See Louisiana State Bar Ass’n v. Hinrichs,
 
 486 So.2d 116 (La.1986). Therefore, the only issue presented
 
 *845
 
 for our consideration is whether respondent’s misconduct is so egregious as to warrant permanent disbarment.
 

 Supreme Court Rule XIX, Appendix E depicts conduct that may warrant permanent disbarment. We agree with the hearing committee and the disciplinary board that Guideline 1 (“[r]epeated or multiple instances of intentional conversion of client funds with substantial harm”) is applicable in this matter. Respondent intentionally converted $895,000 in funds from real estate transactions in which he acted as the closing attorney. Restitution has not been made to any of his victims. These actions reveal a fundamental lack of moral character and fitness to practice law.
 

 We can conceive of no circumstance under which we would ever grant readmission to respondent. Accordingly, respondent must be permanently disbarred.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, it is ordered that the name of H. Edward Ellzey, Jr., Louisiana Bar Roll number 5339, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this State. It is further ordered that respondent make full restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 [1]
 

 . Elite Solutions was connected to Cormier Cares, a non-profit organization owned by Olando Cormier, which offers assistance to those in financial need. Ms. Ruffin contacted Cormier Cares because she was in danger of losing her home through foreclosure.
 

 [2]
 

 . In 2003, this court accepted a petition for consent discipline and publicly reprimanded respondent for performing notarial functions while he was ineligible to practice law.
 
 In re: Ellzey,
 
 03-2981 (La. 11/26/03), 860 So.2d 1112.
 

 [3]
 

 . See
 
 In re: Labat,
 
 08-1926 (La. 11/14/08), 995 So.2d 625;
 
 In re: Fleming,
 
 07-0843 (La. 12/14/07), 970 So.2d 970;
 
 In re: Aubrey,
 
 06-0004 (La.4/28/06), 928 So.2d 524;
 
 In re: Bradley,
 
 05-1188 (La.11/29/05), 917 So.2d 1068; and
 
 In re: Martin,
 
 04-0444 (La.9/3/04), 883 So.2d 392.